Our next case on the call of the docket is Agenda Number 3, Case Number 111-302, People v. Torres. Counsel for the appellant. Mr. Chief Justice, Honored Members of the Court, I am Assistant State's Attorney Tasha Marie Kelly of the Cook County State's Attorney's Office on behalf of the people of the State of Illinois. In July of 1983, this defendant, Encarnacion Torres, was arrested and charged with murder based on the shooting of a man named Diego Cisneros in a bar on the west side of Chicago. Shortly after his arraignment, the defendant fled to Mexico and remained a fugitive for 24 years until he was finally arrested and brought to trial in 2008. During the defendant's absence from the jurisdiction, Leopoldo Pena, the bartender on duty the night of the 1983 shooting, was deported, rendering him unavailable as a witness at defendant's trial. Based on this, the people sought to introduce Pena's testimony from the preliminary hearing. The trial court allowed this and the defendant was subsequently convicted of murder. After his conviction, defendant appealed, arguing that the court abused its discretion by allowing the prior testimony because its admission violated his Sixth Amendment right to confrontation. The appellate court reversed the defendant's conviction, finding that the prior testimony constituted inadmissible hearsay. Basing its decision on the longstanding, finding that the testimony did not meet the longstanding Illinois evidentiary exception, which allows the admission of prior testimony. The people now ask this court to reverse this holding by the appellate court, because the record below clearly reflects that the motive and focus of the cross-examination at the preliminary hearing was the same or similar to that which would have guided any cross-examination at the subsequent trial. In the preliminary hearing, during Pena's testimony, the defense counsel attempted to test his recollection of events and ask what day of the week the crime occurred. And the circuit court sustained the State's objection to that question. Doesn't that show that the scope, the purpose of the preliminary hearing was not to test guilt, but rather to merely see if there is probable cause to hold the defendant guilty? Well, it's correct that the question that was asked was to test the witness's ability to recall the events. But because Pena was the only eyewitness to the shooting and the only other person in the bar that night, the best way to show that he was an unreliable witness and thus the State did not have enough evidence to demonstrate that the defendant was the person who committed the offense was to undermine Pena's credibility as a witness. And that's what the defense attorney attempted to do at the cross-examination at the preliminary hearing. The defendant isn't arguing, as I understand it, that all preliminary hearing testimony is inadmissible where a witness becomes unavailable. If I'm wrong on that, you can correct me when you get up here. But I don't think he's arguing that. It seems that his argument is where there is later discovery that would be a very good issue as to bias and here that Pena was an illegal alien, right? Is that true? Did they know that at the time of the preliminary hearing? The record doesn't indicate whether the people were aware of the fact that the witness was an illegal alien at the time of the preliminary hearing. Don't you think the defendant should have an opportunity to cross-examine someone who's an illegal alien who may have reason or bias to curry favor because of the fact that they're an illegal alien? Or are you saying that they went into enough cross-examination as to bias that that really isn't a concern? I'm saying that what this Court has always said and what the United States Supreme Court has always said is that you look at the overall adequate opportunity that was provided. And in this case, there was an extensive cross-examination that was undertaken at the preliminary hearing that explored issues of credibility, the witness' ability to recall the events. It was a detailed cross-examination. There was a point in the preliminary examination when the defense attorney asked a question about a possible relationship, friendship between the victim's father and the witness. There was an objection. The objection was sustained. The defense attorney explained that he was attempting to ask this question because it was his opinion that it went to bias. And the court allowed him to ask that question. So when you look at the overall opportunity, it's clear that this court, the preliminary hearing court, did not put any restrictions on this defense counsel and that the opportunity that was provided to him was more than sufficient to meet the adequate opportunity that's required under both the evidentiary exception and the Sixth Amendment. And I would say this, too. In People v. Horton and in People v. Tenant, this court looked at this very issue, the admission of preliminary hearing testimony, where a witness has become unavailable. And these same arguments were made to this court. In Tenant, the defendant argued that he was unable to adequately confront the witness at the preliminary hearing because he did not have the benefit of discovery and because of the more limited nature of the evidence. And this court said, while we recognize that these are valid concerns, we find that a preliminary hearing does provide an adequate vehicle for confrontation and for later admission of this testimony. Should we have standards or what factors would you consider for determining if there was effective or adequate opportunity for cross-examination? Should there be a set of factors or standards? Well, what this court said in People v. Rice is that when you're looking at whether there was an adequate and effective opportunity, that what you should look at is what the motive and the focus of the cross-examination at the original hearing was. And the issue in Rice, Rice concerned the admission of prior testimony from a co-defendant's pretrial suppression hearing. And the defendant was seeking to admit that testimony, believing that it was exculpatory for him. The state objected. And what this court said was the defendant, the state did not have adequate opportunity at the original hearing to confront this witness because the motive and the focus of their examination at that hearing was too different from what it would be at a subsequent hearing. And so in defining adequate and effective, this court said we look at the motive and focus at the original hearing and we compare it to the cross-examination that would take place at a subsequent hearing. And if the motive and focus is the same or similar, there has been adequate and effective opportunity. I think that the recently adopted Illinois Rules of Evidence also provide us guidance. That explains that you look at the motive and the opportunity that was provided. When we apply those to what occurred here, as I said, there was extensive opportunity for cross-examination. Other than the question that you brought up, Justice Freeman, and the objection that was sustained, there were no limitations placed on counsel. At the hearing, defense counsel did not indicate that there were other questions or other areas that he wished to explore. And while he was unable to ask questions about Pena's status as an illegal alien, that was not because of an action by the court. And more importantly, neither this court nor the United States Supreme Court has ever said that the inability to question on one particular topic, in and of itself, denies an individual an adequate opportunity for confrontation, where all other circumstances suggest that that adequate opportunity does not exist. Which is the case here. But isn't it, following up on Justice Thomas' question, if defense counsel did not know that this was an area that he should want to or would want to get into because he could undermine the credibility of the witness, doesn't that say that the focus is not the same? Maybe the motive is in the hearing, of course, to find probable cause or to find the defendant guilty. But the focus of the questioning would certainly change if he had more discovery and knew. And if we follow, if I'm following your argument, aren't you, if you're saying that all preliminary hearing testimony shouldn't be admissible, aren't we going to change the nature of preliminary hearings where these turn into a more full-blown hearing, where the defense counsel is going to have to try to get discovery in advance and are going to have to try to do more to undermine the credibility of any witness called? Well, I think that the situation is that, of course, looking back at a cross-examination with the benefit of discovery or the benefit of additional information, certainly every defendant could find something that he would have liked to ask. That if he had discovery, he would have brought up at the initial hearing. It's sort of to analogize it to football. It's like playing Monday morning quarterback. If I would have known this would happen, I would have done this differently. But generally, if you've got one eyewitness who testifies and that's the crux of the case and he is subject to bias or pressures, that's certainly an important factor. It's not just I would have done things differently had I known. It's like maybe I could have undermined the case, isn't it? Well, it obviously is an area that he would have liked to ask questions about. But the case law that has come out from this court in terms of the question of confrontation and opportunity has always looked at the opportunity that was provided as a whole, and has not looked at the question of adequate opportunity from the standpoint of would this have been a better opportunity if he had done it differently? He had this information. Well, let's use your standard for a minute. You say overall adequate opportunity to explore bias, right? That's what you're saying the standard is. An overall opportunity to explore bias. It's an overall opportunity to confront the witness. Okay. As far as the motive to lie goes here, I mean, was there anything in the knowledge and disposal of the defendant at the time that would be equal to or greater toward the motive of bias than the fact that he was an illegal alien? Well, yeah, I believe there was information that he asked about at the hearing, such as the fact that the victim in this case frequented the bar. He was acquainted with the victim as opposed to the defendant. There was the suggestion that there was an actual friendship between the victim and the bartender, suggesting that the bartender would be inclined to want justice for the victim who was shot in his bar, who, you know, while they may not have been friends, they were at least acquaintances. And those areas were, the court did allow him to explore that on cross examination. But I think that overall what this defendant is asking this court to do is to judge opportunity based not on what occurred at the hearing, which is what this court has always done, but to judge it on what didn't occur at the hearing. And if you look at the case of Delaware v. Fenster from the United States Supreme Court, it's analogous in that the defendant in that case claimed that he was denied an adequate opportunity to cross examine an expert witness because there was a line of questioning that he wanted to ask this witness, but the witness wasn't able to answer his questions. He couldn't remember. And the defendant said, because I can't get these answers to these questions, which are vital to my defense, I'm denied adequate opportunity to confront this witness. And what the court said was, adequate and effective opportunity isn't an opportunity to cross examine on each and everything to whatever extent you want to cross examine on. It's a fair opportunity to confront the witness. And that's what was presented here. And while it may have been better for him to be able to ask the questions that he wasn't able to ask, what we're talking about here is the Sixth Amendment right to confrontation. We're not talking about the Sixth Amendment right to present a defense. We're not talking about anything other than the opportunity that was provided to him for confrontation. Do I understand correctly that it is your position that because the motive and focus that is probable cause or guilt is the same in this case? And preliminary hearing is a trial, that all preliminary hearing testimony should always be admissible? No, that's not our position. Our position is that the question of adequate and effective opportunity for cross examination begins with looking at the motive and focus. And once you've satisfied that portion of the test, then, as the rules of evidence say, you then look at the opportunity that was provided. So if there had been undue restrictions placed on this defendant at the time of the cross examination, for instance, if he would have attempted to ask additional questions. And is it your position that if there are no restrictions, that preliminary hearing testimony is always admissible in the absence of a witness? Where the parties are the same. That's correct. Doesn't that create an incentive for the State not to get the witnesses to trial? If it's a difficult witness to find, why would you bring them in? You've got their testimony, maybe the State likes the way it came out there without knowledge that the witness is subject to deportation. Well, unavailability, a valid finding of unavailability has always been a factor in the equation. And it still would be. There would have to still be a finding by the court that the witness was actually unavailable. And certainly if... Let me understand your position. It's always admissible unless the trial court has put undue restrictions on questions on cross. Yes. Let me ask something that Justice Kramer alluded to. Does the fact that this defendant avoided arrest for 24 years have any effect on his any influence on the assessment of the factors in this case? I think it's relevant only to the extent that it explains why the people had to proceed the way that they did, why the witness was unavailable. Certainly if defendant had not fled the jurisdiction, even if our witness was an illegal alien, we could have attempted to put a... delay his deportation. But in terms of directly addressing the issue of his opportunity for confrontation, I'm not sure that it's a factor in the equation. So when you alluded earlier to, perhaps I misunderstood you, about the unavailability analysis, that time frame that I mentioned doesn't play into that? Not directly, no. It just explains why our witness was unavailable. In terms of the analysis that was undertaken just by the court, the appellate court in this case, where the appellate court went wrong is that they went beyond looking at the opportunity into the question of the effectiveness of the cross-examination that was undertaken. And this court clearly stated in People v. Sutherland that those are distinct questions and that there is a difference between the opportunity that was provided and the effectiveness of the cross-examination that was undertaken. And in this case, the appellate court's analysis and the appellate court's concerns that were expressed clearly went to effectiveness. And we would also point out that the cases that the appellate court relied on here in order to support the idea that the inability of defendant to ask about Pena's status as an illegal alien only established that that testimony was relevant. And they didn't address the question that's before this court, and that is, is the fact that defendant was unable to ask about Pena's illegal status in and of itself enough to deny this defendant an adequate opportunity? That question was not addressed in those cases. And when you look at the overall opportunity that was provided in this case, it was more than sufficient to meet the requirement, both under the Illinois evidentiary rule and the Sixth Amendment. Does the record in this case indicate whether there was any inquiry about the witness's status as an illegal immigrant or alien during the trial? And would that be a proper area of inquiry if defense counsel learned that to try somehow to use that to impeach the defendant? It certainly would have been. And in fact, as to that information and as to the statements, the alleged prior inconsistent statements that defendant was not aware of, there was a lengthy discussion with the court, and the court informed the defendant, I know that you were not able to ask about these things at the preliminary hearing, so here's what I'm going to do. I'm going to let you ask these questions and bring this information out in your case in chief without laying a foundation. And while defendant ultimately chose not to take the court up on that offer, he was granted that opportunity, and certainly that speaks to the question of whether he was prejudiced. If there are no other questions, we would ask this court to reverse the holding of the appellate court in this case and reinstate defendant's conviction. Thank you. Thank you. Counsel for the appellee. May it please the court. I would first like to address the question brought up by Justice Thomas. We have in fact three arguments for affirmance, and the first is that the appellate court Excuse me, I'm not sure if you mentioned your name for the record. My name is Stephen Richards, and I represent Incarnacion Torres, and I thank you for that correction, and apologize for not mentioning that before. I thank Justice Thomas for reminding me to ask you. Thank you. Just to make sure the broad outlines of the arguments are clear, the appellate court did not reach any constitutional issue in this case. It specifically did not do so because the appellate court in the past often has been slapped down by this court where it reaches out for a constitutional issue and doesn't need to do so. So its holding was based on Illinois evidence law, and under Illinois evidence law, sometimes preliminary hearing testimony is admissible, sometimes it isn't. At the appellate court and in this court, we had raised additional arguments that the admission of the preliminary hearing testimony in this case violated the Sixth Amendment for reasons particular to the case. And also a general argument that preliminary hearing testimony always violates the Sixth Amendment. But that is our most extreme argument. And I would say that it is just as extreme as the argument just advanced by the State, which is that preliminary hearing testimony always comes in as long as the witness is unavailable and as long as the trial court at the preliminary hearing places no restriction, no direct restriction upon what defense counsel may ask. Do the trial court place any restrictions on cross-examination that went into the bias? Actually, in terms of bias, no. Although I should answer this question in two ways. One, there is a question as to the relationship between the witness and the victim's father. This was objected to, and at first the trial court sustained that objection. Then the attorney said it goes into bias, judge, and the trial court reversed himself and then allowed that question to be asked. Once the question was asked, the witness said no, I don't know him, and that line of inquiry ended. So that was it in terms of inquiry into bias. There was, of course, no inquiry into an obvious or what later turned out to be an obvious source of bias, the witness's status as an illegal alien. So in terms of restrictions, there was a significant restriction, which the appellate court found significant, as to testing the witness's memory as to what day of the week it was, which is something the State concedes could have been asked at trial along with a number of other questions. But to return just to what I said, in terms of what the State is arguing here, they are arguing for a very significant change in the law. It is our interpretation of the law and the appellate court's interpretation that this court, beginning from the time of court and intendant, always said this, sometimes preliminary hearing testimony is going to come in, sometimes it isn't. It's going to be evaluated on a case-by-case basis. And the court in the two cases of Horton and Tennant, which were decided on the same day and I think appear back-to-back in the reporters and actually refer to each other mutually, Horton in particular said, we have difficulty with the admission of preliminary hearing testimony. We're worried about it. We're concerned about it. We don't want to exclude it altogether. But the reason it's coming in in Horton in particular is this. One, it's a relatively minor witness and there are other witnesses who testify to the same thing. Two, no one is pointing out any restriction on the cross-examination. Three, no one has told us in Horton that there is something that came out in discovery which could have been asked at the preliminary hearing that was not asked. So for these reasons, we don't see any problem because no one is telling us what difference it would have made had you had better cross-examination at the preliminary hearing. All you're saying is you don't like preliminary hearings. So we are rejecting that argument. We are going case by case. Now, so Justice Burke, I believe, asked what factors you would use in assessing what sort of opportunity. First, I want to make a distinction, which I think is obscured by the State's brief, that you can't conflate them, you can't mix them together into some mock mix-up. Just in terms of common sense, for example, to take an example I hope will offend no one, let's say right now I have a motive to be a member of the Supreme Court of Illinois. I'd like that. I want to be a member of the Supreme Court tomorrow. Now, I could have this motive from now until tomorrow, and it's never going to happen. Why? Because there's no vacancies on the court. Two, there's no election pending, and I haven't run an election, so I can have this motive for all the days long, but I have no opportunity to achieve it, absolutely none, zero. Motive means that's what I could do if I could do it. Opportunity means I have the tools to do it. So these are two separate questions. Now, the new rule, and it should be noted that the new rules of evidence, by their own terms, do not change the Illinois law of evidence except where that is specified. And this rule is not one of those instances where it specifies a change. So we have to assume that the new rule incorporates Illinois case law, Horton, Tennant, and all the cases that follow them. In fact, it can even incorporate an Ohio v. Roberts reliability analysis. Just because Ohio v. Roberts no longer applies in the constitutional setting doesn't mean it can't apply here. So what are the factors that this court looked at and courts in general look at? One is they look at the importance of the witness. Let me just say this. The first thing courts have looked at is the nature of the proceeding. In some proceedings, particularly bond hearings, and the Brown case is a good example of this, the courts have said, we don't care what the trial judge allows. And that's what happened in the Brown case. The court said, go at it. Ask any question you like. Counsel didn't ask any questions, and then the court said, you're playing chess. Ask your questions. So then he went on with an hour of questions. The court said, you know, that's nice, but this was a bond hearing. It wasn't intended to be an evidentiary deposition to preserve testimony. So just because the court tried to change into something else doesn't mean that it was an evidentiary deposition. So there are certain proceedings which, no matter how much opportunity there is, the motive is not the same. There are some proceedings, like motion suppress or preliminary hearings, where it might be. It depends. In the Rice case, one reason what the court said, and Rice is important because it can't be a constitutional case, because it involves the admission of testimony, defense is asking for the admission of prior testimony, and the state is saying we object on evidentiary grounds, the state, of course, having no Sixth Amendment rights. The court says it was a motion to suppress, so the motive and focus is different, but they also pointed to something specific. They said, listen, if the state had known that somebody was going to use the co-defendant's testimony, they would have been questioning the co-defendant about his relationship with the defendant. Are you guys friends? Do we know each other? Do you have a motive to testify in favor of the defendant? And since they had no opportunity to do that, even though we don't know what the answers to those questions would be, the court said in Rice that testimony isn't coming in. So in terms of the factors of opportunity, they're just common sense. Is there any dispute, counsel, that the defendant was not aware that Pena was an illegal alien at the time of the preliminary hearing? I believe there is none, and I'll tell you why I believe there is none. First of all, obviously counsel was interested in questioning about bias and made some attempt to do so. So if he had known about it, one can't think of a reason why he wouldn't do it. Two, the point about the illegal alien was brought up on the motion for new trial, which I did personally, and there was no dispute on the part of the state. The state didn't say at that point, listen, our records show that we knew he was an illegal alien from day one. All that appears is nobody seems to have known at the time of the preliminary hearing one year later he's deported, which means he must have been an illegal alien at the time. It's hard to imagine another sequence of events. So that is not in dispute. Now, in terms of the factors one could consider and the factors the court has considered and the factors that the court below considered, you look at the importance of the witness, you look at the information available to the defense at that point, and if the defense can't point to something that's come out later that was significant, the defense loses, and the defense has lost many of these cases just for that reason. You look at the length and actual nature of the cross-examination, and here I think the state is being unfair to the appellate court. The point of looking at the actual cross-examination is not to grade defense counsel's performance or not to say, boy, it was a good job or it was a bad job or whatever. No. The point is where the cross-examination is extremely extensive, you weigh that against what defense counsel now says I would have done had I had discovery. And if what he did is like this and discovery is like that, the testimony is coming in. But what he did is like this and discovery is like that, then the preliminary hearing testimony should not come in. This was not an extensive examination. It's about 30 questions, three pages of transcript. One major obvious point is that a day of a week, an objection is sustained. Compared to what he could have done, compared to what he could have confronted the witness with had he had it available, his status as an illegal alien, his prior inconsistent statements, one thing the court. Your argument here is not that the court restricted his examination. It's just that he didn't have the tools available at the time he was asking the questions. Absolutely. And your position, again, just so that I'm clear in my mind, is not that all preliminary hearing testimony should be excluded, but it should be done on a case-by-case basis depending upon the way of balancing that you just talked about. Absolutely. For my first issue, that is exactly, and the major reason to affirm the appellate court, that is exactly what we are saying. So in his, excuse me. Yes. Let me follow up one question. Sure. Then I think the State indicated that the trial judge made an offer to defense counsel without having to lay a foundation to get into the basis for possible bias or prejudice or challenging the credibility of this witness. Do you agree that was the status? And then how does that factor into our analysis, if at all, as to whether or not he has an adequate opportunity to challenge the credibility of the witness? Well, to answer the first factual question first, what the trial court offered was an opportunity as to some of the prior inconsistent statements. The issue of an illegal alien was not brought up at that point, so we don't know how the trial judge would have addressed that or if he would have addressed that. So we just don't know. Next, the question, which I think is maybe is partially a Sixth Amendment question but partially also a preliminary hearing question is this. Is it the same, is confronting a witness the same if you have paper impeachment as opposed to saying to the witness, well, didn't you tell the police X, Y, and Z? Because I think you all know from your experience, all of you, I think, probably without exception having once been trial judges, that often when you ask a question or actually confront a witness with their status as an illegal alien or a prior inconsistent statement, you don't get a mere yes or no, you often get a change in the testimony. Often when I ask that question, the witness doesn't say, well, but gives an explanation, changes the testimony, modifies the testimony. Confrontation means more than paper impeachment. I think confrontation means in its full force that you're able to put these things sort of literally in the witness's face, see the reaction, and see if it makes a change. Now, that brings up the difference between preliminary hearings and trials. Let me ask you a question, counsel. Sure. In making this assessment, are we or should we or are we to look at the lens of what came out in discovery, in this case in assessing whether there was an adequate opportunity to cross? Yes. And so to follow up on what Justice Kramer asked, so if something came up in discovery that wasn't covered or wasn't known at the time of the testimony initially, it can't be cured? No, that's not true. It's not true? It's not true. How can it be cured? Well, first of all, if something comes up in discovery that wasn't known at the time, then the analysis depends upon how important it is and how much difference it would make. In the case of many of the early cases involved things where it was pointed out there was minor impeachment or there was something that was not very significant. The courts have to make an assessment of how important the things that come up in discovery are. And how you make the assessment is, one, how important are they? Two, what was the cross-examination actually done? Three, what is the importance of the witness in terms of the overall case? And you use all of those things in making the judgment as to whether the preliminary hearing testimony goes in. It's the court's sort of judgment, which I think courts are well-equipped to make and have been making for the last 30 years or more since Horton and Tennant, without a great deal of difficulty. It's not one of these things that's amenable to bright-line rules. The reason it's not amenable, by the way, is that a preliminary hearing testimony in a trial, and if we were talking about a prior trial, the analysis I think would be entirely different. You know, a preliminary hearing testimony in a trial do have some things in common. But with a slight exaggeration, I can say what they have in common is what a horse chestnut has with a chestnut horse. I mean, there are certain elements that are the same. There's a witness, there's a court reporter, there's a judge, there's defense counsel, there's a prosecutor. But as Justice Carmier pointed out, there are many policy reasons to make sure that preliminary hearings stay preliminary hearings and trials stay trials. Because if it's not, one thing, preliminary hearings are going to be very lengthy, and they're a useful tool to establish probable cause and for just a general screening as to whether we have the right people in the criminal justice system at all. If we can put them at a point where defense counsel has to say, I'd better get full discovery, I'd better ask for continuances, I'd better do subpoenas, I'd better ask every question in the world because this witness might not show up and then I'm going to be stuck with what I've got, then we're going to be changing the criminal justice system in Illinois considerably. And I believe to its detriment. That last point you were making, counsel, before a couple of questions here, namely that you should have the right to get in the face of someone in cross-examination because in your experience testimony changes. Is that in response to opposing counsel saying that in this case there was what amounted to some type of curative instruction given or the fact that you were able to put in that he was an illegal alien? Yes. I mean, I think that is the best response to that in terms of this sort of notion of paper impeachment. I would also say that. But wouldn't the paper impeachment also give you the opportunity in closing argument to stress the bias then? Well, in this particular case, defense counsel didn't bring it up or whatever. I mean, defense counsel didn't bring up the illegal alien point in the pretrial motions. It was brought up in the post-trial motion and the judge rejected it without giving a reason. So I'm not sure what he would have done with the illegal alien point had it been brought to his attention earlier. Okay. So in this particular case it never did come in in the trial? It was not introduced at trial, no. It was brought up as an additional reason not to put in the preliminary hearing testimony in the post-trial motion and the judge did not comment on it one way or another. The judge just mentioned, I believe, Horton and Tennant said he thought it was admissible and that was that. I mean, he didn't even go further in terms of his reasoning. But I would also say that in terms of this policy point which Justice Conroy made, it sort of fits in with what the state is saying because the state has said at a number of points, well, these are really claims of ineffective assistance of counsel. That's what you're really saying. You're really saying that you wish you had a better attorney at the preliminary hearing who had brought up the fact that there's an illegal alien and done something or you wish this and that and the other. But that's kind of the point. If we make preliminary hearings into trials, then we will import the full panoply of effective assistance of counsel in terms of counsel having to do everything possible to win them and to bring in every possible point of impeachment and to seek continuance and so forth. And that, I would suggest, is a very, very poor idea which should not be adopted by this court. The way this court has dealt with these issues in the past is a good way of the same way the appellate court dealt with them. It's a good way of dealing with them. And for that reason, the appellate court should be affirmed. I want you to clarify something for me. In response to a question I asked, you said paper impeachment is not the same as confronting the witness, and I understand that. But then in response to Justice Garmon, I think she asked about looking to discovery to see what came out and can it be cured or is there no way to cure it. And I think you also said, yes, it could be cured. Well, what I said was it could not be cured by doing paper impeachment. What I'm saying is if you look to the later discovery and the later discovery seems to be insignificant, then you don't have a problem and the preliminary hearing testimony is coming in. Again, you're weighing was something revolutionary produced during discovery or was it not? And again, you have to remember that what you're doing is introducing a preliminary hearing, a very limited procedure in place of trial. In this case, basically in place of the entire trial because this was the sole witness without whose testimony, as the appellate court said, and I don't think the state would deny, without his testimony, Mr. Torres would have been acquitted straight out. There is not enough evidence to hold him. My time has expired. If there are no further questions, I thank you. Thank you. Counsel for the appellate. Just to clarify a couple of points in response. The factors that counsel is discussing have never been specifically set forth by this court as factors that should be considered in determining whether there's adequate opportunity. The factors that he's talking about were discussed in Horton, and it was in the court's discussion of why in this case there was adequate opportunity. But the court did not, this court did not set forth a rule stating these are the factors that you need to look at, such as did anyone else testify to this? Has defendant brought up other information that would have been helpful that he was not aware of? So it's not correct to say that Horton identified those as the factors that we should look at in determining adequate opportunity. And I think it's a fair interpretation of those two cases to say that no specific definition of adequate opportunity was set forth. And it's because of that fact that over the next several years, the appellate courts applied all types of factors in looking at whether there was adequate opportunity. And some of those factors were the ones that counsel discussed here, such as the significance of the witness and things like that. But when this court decided Rice and this court defined adequate and effective opportunity, what this court said was you look at the motive and focus of the initial cross-examination and you compare it to the cross-examination that would take place at a subsequent proceeding. And if they are the same or similar, that is adequate and effective opportunity. It's since been clarified that the opportunity is a separate component that we look at. And we look at that in terms of were there restrictions placed on this defendant, undue restrictions placed on this defendant by the court. And that is the test that should have been applied by the appellate court in this case, and it was not. And just to... When you wanted the testimony from the preliminary hearing, the only thing that was brought up by defense counsel at that time is they said they should have an opportunity with respect to some prior inconsistent statements to the police, right? I'm sorry, Your Honor. Could you repeat the question? Let me put it this way. It was never brought up at the time of trial that the preliminary hearing testimony of Pena should not come in because of the fact that they did not get to cross-examine on the illegal alien issue. Is that right? I thought counsel said that was only brought up in the post-trial motion. Specifically, that was not a part of his complaint. Obviously, he was aware that Pena was an illegal alien because he had been deported, and we did put that before the court. I guess what I'm getting at, there aren't any waiver arguments raised by you, though, are there? No, there are not. But, counsel, when you say it was brought up, I think you said the post-trial motion, right, on the immigration status? I believe counsel said that, yes. Because that's the first time it was known to people? No. We informed the court at the time that we sought to use Pena's testimony that he was an illegal alien, and there was an objection to the use of that testimony. I believe the main point of the motion, of the hearing on that motion, was the fact that there were additional statements. My recollection is that it was also discussed that he was an illegal alien, but that was not the thrust of his objection at the time. And just to clarify a point, in my initial argument, the court did not specifically tell him, you can raise the point that he's an illegal alien. The court said, you can bring out essentially whatever information you want, and I will give you great leeway here. So the assumption is that if he would have sought to bring out the fact that he was an illegal alien, he would have been allowed to. Well, my question wasn't stated that well. It wasn't known at the time of the preliminary hearing, the immigration status or the possibility of deportation. That's correct. So using your prongs of focus and opportunity, would opportunity have been diminished, not knowing that this witness had an immigration status problem that could face deportation? In other words, you know, I think the question was earlier about, you know, do you have an opportunity if you don't have all the tools available? Tools might be the information. If they had known this witness could be deported, they probably would have taken a different approach at the preliminary hearing to ask more questions. Do you think that's a fair way to look at it or not? In this case, I don't think it's a fair way to look at it, because when you look at the thrust of the cross-examination at the preliminary hearing, there was really nothing more that he could have asked, save for the final question, which is, and by the way, sir, are you an illegal alien? He had already challenged the witness's credibility. He had already challenged the witness's ability to view the events. He had highlighted the fact that this witness was in the back room when the shooting took place. He had already raised the issue of bias. And no restrictions were placed on him in terms of any of those questions, except for the question that Justice Freeman brought up earlier. So would the focus of the cross-examination have changed? No, I don't believe that it would have. I haven't heard the word yet, but in the last couple of exchanges, you've indicated now, and counsel said it's a distinction without merit, you've indicated that the trial judge would have allowed him great latitude at trial to indicate that Pena was an illegal alien. He said, well, I should have had the opportunity to cross-examine, we should have had the opportunity to cross-examine him to see if his testimony changes or whatever. But I haven't heard the word, but as part of your argument in light of what, and we have to research the record on this as to whether or not the trial judge really would have allowed great latitude, but as part of your argument that it's harmless here in light of the fact that that information would have come out? I know counsel has an argument as to the harmless nature of it. He said he should have had a right to cross-examine at any rate. But is that part of your argument? Certainly in terms of the Sixth Amendment portion of it, harmless is a part of it. As we stated, the information could have been brought forward in other ways. And more importantly, the record in this. What about as to the evidentiary nature? As to both, I mean, the record indicates that in this case, even though the defendant wasn't able to ask some questions that he wanted, he actually used that to his advantage. If you look at his arguments, if you look at his motion for a directed finding, he highlights the fact that all we have is a preliminary hearing, that we didn't get the opportunity, that they didn't present any witness in this courtroom who identified my client as being in the bar that night. All we have here is a cold record. They're putting in a piece of paper instead of a witness. So he actually used it to his advantage and challenged the credibility of the witness, even without the witness being there. So, yes, certainly harmless is a component of our argument. So, again, we would ask this Court to reverse the holding of the appellate court in this case and reinstate defendant's conviction. Thank you. Thank you. Case number 111302, People v. Torres, is taken under advisement as agenda number three. Thank you for your arguments.